IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret L. Burns, : 
        Appellant : 
  : 
       v. : No. 685 C.D. 2025
  : Argued: May 14, 2026
Commonwealth of Pennsylvania, : 
Department of Transportation : 

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE STELLA M. TSAI, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT          FILED: July 7, 2026

      Margaret L. Burns (Condemnee) has appealed an order of the Court of Common Pleas of Montgomery County (trial court) striking three counts from her "Petition Requesting the Appointment of Viewers" (Petition). The trial court did not reverse its prior order granting the Petition, and, thus, its order left standing Count I, which seeks just compensation for the *de jure* taking of her property by the Pennsylvania Department of Transportation (PennDOT) for the improvement of a state road. The trial court sustained PennDOT's preliminary objections to Counts II to IV for the stated reason that they were encompassed in Count I's request for damages for PennDOT's *de jure* taking. Condemnee appeals the striking of Count III, which asserts that PennDOT's Declaration of Taking did not include an accurate identification of Condemnee's property that was actually condemned. As a result, Condemnee argues that PennDOT also effected *de facto* condemnation of her property for which she may pursue just compensation. For the reasons that follow, we reverse and remand for further proceedings.

## Background

PennDOT seeks to widen, repave, and improve County Line Road, which separates Bucks County and Montgomery County. Petition, ¶¶2-3; Reproduced Record at 2a-3a (R.R. __). Condemnee owns a 7.840-acre parcel of land in Horsham, Pennsylvania that includes her principal residence and borders County Line Road. On August 22, 2019, PennDOT filed a Declaration of Taking to effect a fee simple taking of 0.114 acres of Condemnee's property to widen the County Line Road right-of-way. PennDOT's Plot Plan, which was filed with the Declaration of Taking and served on Condemnee, showed a taking of a strip of land, 13 to 14 feet wide, from her property that borders County Line Road. Supplemental Reproduced Record at 29b (S.R.R. __). Identifying Condemnee's house as a "masonry dwelling," the Plot Plan showed a cutout from the right-of-way taking for that dwelling. *Id*. Stated otherwise, the Plot Plan excluded Condemnee's house from the expanded right-of-way.

In May of 2024, Condemnee hired a surveyor who used PennDOT's recorded Plot Plan to do a survey of Condemnee's property. The surveyor determined that a portion of Condemnee's house was in the area taken by PennDOT for the expanded right-of-way. On January 22, 2025, Condemnee filed her Petition. Count I sought the appointment of a board of viewers to assess damages for the *de jure* partial condemnation of her property. Count II sought property relocation benefits as a result of the taking of her house. Count III sought damages for an inverse, or *de facto*, condemnation of that part of Condemnee's house that was not shown on the "Plot Plan or described in the Notice of Condemnation." Petition, ¶20; R.R. 5a. Count IV requested, as an alternative to the condemnation of the house and relocation benefits, to have PennDOT grant Condemnee an easement so that she

2

could rebuild the concrete porch and steps, part of which was now owned in fee simple by PennDOT.  Petition, ¶36; S.R.R. 10b.

Counts I and II were filed pursuant to Section 502(a) of the Eminent Domain Code, 26 Pa. C.S. §502(a); Count III was filed pursuant to Section 502(c) of the Eminent Domain Code, 26 Pa. C.S. §502(c).  Count IV was filed pursuant to Sections 502(a) and 502(c) of the Eminent Domain Code, 26 Pa. C.S. §502(a), (c).

On February 19, 2025, after the appointment of a Board of Viewers, PennDOT filed preliminary objections to Counts II, III, and IV of the Petition, asserting that a *de facto* taking could not be included in the Petition because Count I sought damages for a *de jure* taking.  PennDOT also argued that Condemnee did not allege substantial deprivation of the beneficial use and enjoyment of her property, which is required to assert a *de facto* condemnation.  Finally, PennDOT argued that its actions did not affect the highest and best use of Condemnee's property, including that portion remaining after the partial taking.

On April 24, 2025, the trial court sustained PennDOT's preliminary objections.  Condemnee filed a motion for reconsideration, which the trial court denied on May 8, 2025.  In its order denying reconsideration, the trial court explained that its legal conclusion was based upon this Court's holding in *2800 N. Broad Street, LLC v. Department of Transportation*, 259 A.3d 1022 (Pa. Cmwlth. 2021) (*2800 N. Broad Street*).  There, this Court held that the measure of damages for the *de jure* partial taking of property includes economic losses to the remaining property, as a matter of law.  It followed, according to the trial court, that because the Petition sought damages for PennDOT's *de jure* taking, it could not also seek damages for a *de facto* taking.

After the trial court denied Condemnee's request for reconsideration, Condemnee appealed to this Court.

On September 30, 2025, the trial court granted PennDOT leave to amend its Declaration of Taking to reduce its fee simple acquisition to 0.044 of an acre and to designate the remaining taking of 0.070 acres as a temporary construction easement. PennDOT Brief, Appendix A. Condemnee did not object to PennDOT's request to amend its Declaration of Taking. *Id*. at 5. As a result, the portion of Condemnee's porch taken in fee simple by PennDOT's 2019 original Declaration of Taking has been effectively returned to Condemnee.

**Appeal**

On appeal, Condemnee limits her challenge to the trial court's striking of Count III from her Petition, which seeks damages for the fee simple taking of part of her house that was not identified in PennDOT's Declaration of Taking. She argues, first, that the trial court's order sustaining PennDOT's preliminary objections is a final and appealable order. Second, she argues that she was not required to file preliminary objections to PennDOT's 2019 Declaration of Taking within 30 days because she could not know the Plot Plan attached thereto was erroneous and misleading. Third, PennDOT effected a *de facto* condemnation of her house by taking property in addition to the property identified in the *de jure* Declaration of Taking. Fourth, the trial court erred and abused its discretion in sustaining PennDOT's preliminary objections without first allowing briefs and hearing oral argument on their merit.

4

**Analysis**

## I. Whether the Trial Court's Order on Preliminary Objections is Appealable

In her first issue,[1] Condemnee contends that the trial court's order, which sustained PennDOT's preliminary objections, is appealable as of right. This is because the trial court's order put her out of court on her claim that PennDOT's taking of part of her house effected a *de facto* taking for which she is owed just compensation. PennDOT agrees that court orders that either sustain or overrule preliminary objections in an eminent domain case are immediately appealable. It reiterates that the trial court proceeding on Count I of the Petition will provide Condemnee all the damages to which she is entitled. Nevertheless, PennDOT concedes that the question of whether a *de facto* taking has occurred needs to be decided before the Board of Viewers assesses "damages for a *de jure* taking from the same property." PennDOT Brief at 18.

Eminent domain cases are resolved in a bifurcated process. All factual and legal issues must be resolved by the court before a case can be sent to a board of viewers. "Indeed, the trial court must first determine whether a de facto taking has occurred before sending the matter to a board of view to determine damages." *Hill v. City of Bethlehem*, 909 A.2d 439, 442 n.8 (Pa. Cmwlth. 2006). As we have explained, preliminary objections are intended "to resolve all legal and factual

---

[1] On August 21, 2025, this Court, *sua sponte*, ordered the parties to address the question of whether the trial court's order on PennDOT's preliminary objections was appealable as of right under Pennsylvania Rule of Appellate Procedure 311(e), PA.R.A.P. 311(e). That rule states, in relevant part, as follows:

> **(e) Orders Overruling Preliminary Objections in Eminent Domain Cases.** An appeal may be taken as of right from an order overruling preliminary objections to a declaration of taking and an order overruling preliminary objections to a petition for appointment of a board of viewers.

*Id.*

challenges to a declaration of taking before proceeding to the damages issue – *i.e.*, hearing by an appointed board of viewers." *York Road Realty Co., L.P. v. Cheltenham Township*, 136 A.3d 1047, 1050 (Pa. Cmwlth. 2016) (quoting *William Schenk & Sons v. Northampton, Bucks County, Municipal Authority*, 97 A.3d 820, 824 (Pa. Cmwlth. 2014)).  Here, it would be premature to have the Board of Viewers assess damages without first deciding the legal question of whether Count III states a valid *de facto* taking claim.

We hold that the trial court's order sustaining PennDOT's preliminary objections to Counts II, III, and IV of Condemnee's Petition is final and appealable. Accordingly, this Court has jurisdiction to decide Condemnee's appeal of the trial court's striking of Count III from the Petition.

## II.  Waiver under Section 306(b) of the Eminent Domain Code, 26 Pa. C.S. §306(b)

In her second issue, Condemnee argues that she was not bound by the 30-day deadline in Section 306(a)(1) of the Eminent Domain Code, 26 Pa. C.S. §306(a)(1), for seeking damages for a *de facto* condemnation of part of her house. She contends that because PennDOT's Plot Plan was misleading about what part of her property was being condemned for the expanded right-of-way, the waiver provision set forth in 306(b) of the Eminent Domain Code did not apply to Count III.  PennDOT responds that its Plot Plan contained information sufficient to provide notice of the taking and, thus, Condemnee had to file preliminary objections to the Declaration of Taking within 30 days of receiving the notice of condemnation.  Since Condemnee did not do so, she has waived the issue set forth in Count III of her Petition.

6

The Eminent Domain Code authorizes a landowner to challenge a condemnation. Section 306, titled "Preliminary Objections," states, in pertinent part, as follows:

> **(a) Filing and exclusive method of challenging certain matters.--**
>
> (1) *Within 30 days after being served with notice of condemnation*, the condemnee may file preliminary objections to the declaration of taking.
>
> (2) The court upon cause shown may extend the time for filing preliminary objections.
>
> (3) *Preliminary objections shall be limited to and shall be the exclusive method of challenging*:
>
>> (i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
>>
>> (ii) The sufficiency of the security.
>>
>> (iii) *The declaration of taking*.
>>
>> (iv) Any other procedure followed by the condemnor.
>
> **(b) Waiver.--**Failure to raise by preliminary objections the issues listed in subsection (a) shall constitute a waiver. Issues of compensation may not be raised by preliminary objections.

26 Pa. C.S. §306(a)-(b) (emphasis added). PennDOT argues that Count III of Condemnee's Petition challenges PennDOT's declaration of taking. Because the Petition was filed in 2025, long after the filing of the 2019 Declaration of Taking, Condemnee has waived Count III. PennDOT explains that only where "the effect of the condemnation could not have been determined from the Declaration of Taking[]" is a condemnee excused from the 30-day limitation in Section 306(a)(1) of the Eminent Domain Code. PennDOT Preliminary Objections ¶65; R.R. 13a-14a.

7

The Eminent Domain Code sets forth the requirements of notice that must be given by a condemnor. It states in relevant part as follows:

(c) **Contents.**--*The notice to be given the condemnee shall state*:

. . . .

(8) *A statement that the condemnee's property has been condemned and a reasonable identification of the property.*

(9) *In the case of a partial taking, a plot plan showing the condemnee's entire property and the area taken.*

(10) A statement of the nature of the title acquired.

(11) A statement specifying where a plan showing the condemned property may be inspected in the county in which the property taken is located.

. . . .

26 Pa. C.S. §305(c)(8)-(11). PennDOT asserts that its Plot Plan met these standards and, thus, Condemnee was required to file preliminary objections to its Declaration of Taking within 30 days of its service under Section 306(a) of the Eminent Domain Code.

PennDOT's Plot Plan depicts the area of Condemnee's property condemned for the right-of-way. Included thereon is the rectangular outline of Condemnee's "masonry dwelling," which is shown as entirely excluded from the taking for the expanded right-of-way. R.R. 8a. Only through her subsequent survey did Condemnee learn that the expanded right-of-way ran through the porch and steps of her home. R.R. 10a. Condemnee argues that because ". . . *the effect of the condemnation could not have been determined from the Declaration of Taking*[,]" she was not required to file preliminary objections within 30 days of the notice of condemnation. Condemnee Brief at 28 (quoting PennDOT Preliminary Objections ¶65; R.R. 13a-14a).

8

To support its contention that the Plot Plan it served on Condemnee "reasonably" identified its condemnation of Condemnee's property, PennDOT directs this Court to *Milford Traumbauersville Area Sewer Authority v. Approximately 0.753 Acres of Land*, 358 A.2d 450 (Pa. Cmwlth. 1976) (*Milford Traumbauersville*). There, we held that a plot plan for a sewer line condemnation did not have to include elevations in order for the condemnee to discern the extent and effect of the condemnation. PennDOT argues that the plan need only contain detail sufficient to show that "'there is some basis to determine where on the property' the area taken is located[.]" PennDOT Brief at 12 (quoting *In re Powell*, 260 A.3d 298, 313 (Pa. Cmwlth. 2021) (emphasis in original omitted)). By contrast, in *In re Powell*, this Court held that a plot plan that outlined the entire property without showing the location of the easement was insufficient. Likewise, in *Condemnation by North Strabane Township Municipal Authority*, *Washington County* (Pa. Cmwlth., No. 1152 C.D. 2016, filed August 18, 2017) (*North Strabane*) (unreported),[2] this Court held that a simple drawing without measurements of the relative distance of the taking from property lines was insufficient to advise the landowner of the land being taken.

PennDOT argues that, unlike the defective plans in *In re Powell* and *North Strabane*, the Plot Plan shows Condemnee's entire property, identifies the land taken, and provides measurements taken from multiple reference points. The Plot Plan did not show the porch, but this is a "detail" not required under the holding in *Milford Traumbauersville*.

We reject PennDOT's argument. The Plot Plan did not show that the taking included the concrete porch, which is part of the "masonry dwelling." *See*

---

[2] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion issued after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

R.R. 10a.  To the contrary, the Plot Plan showed that the taking was intentionally designed to avoid the dwelling on Condemnee's property, locating the outer boundary of the new right-of-way several feet away from the masonry dwelling.  The only reasonable way to read the Plot Plan is that it placed the porch within the rectangular footprint of the dwelling.  Further, the only access to the dwelling is to and from that porch.  Petition, ¶25; R.R. 6a.  The porch was not a mere "detail," and its omission from the Plot Plan understated the actual contours of PennDOT's taking and was misleading.

The importance of an accurate plot plan has been explained by this Court as follows:

> *The plot plans and property plat filed with the declaration of taking and served upon a condemnee are part of and indeed, the heart of a declaration of taking.*  It is only by reference to such plans that one can determine what property is the subject of condemnation and, in the case of a partial taking, what part of a property has been taken.

*West Whiteland Associates v. Department of Transportation*, 690 A.2d 1266, 1269 (Pa. Cmwlth. 1997) (emphasis added).  Our Supreme Court has held that where a plot plan does not "establish the extent or effect of the taking[,]" the condemnee is not bound by the 30-day deadline in Section 306(a) of the Eminent Domain Code for filing preliminary objections to a declaration of taking.  *Szabo v. Department of Transportation*, 202 A.3d 52, 53 (Pa. 2019) (Opinion Announcing the Judgment of the Court) (*Szabo II*).

Here, the Plot Plan did not show that any part of Condemnee's masonry dwelling was being condemned.  Thus, Section 306(b) of the Eminent Domain Code had no application to Condemnee's challenge to PennDOT's Declaration of Taking as failing to show all the property being condemned.

10

### III. *De Facto* Condemnation

Condemnee next argues that a declaration of taking that does not accurately describe the property being condemned effects a *de facto* taking for which damages can be sought. The Eminent Domain Code authorizes the filing of a petition for appointment of viewers where there has been a condemnation without the filing of a declaration of taking. Section 502(c)(1) states that "[a]n owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers . . . setting forth the factual basis of the petition." 26 Pa. C.S. §502(c)(1). Condemnee further argues that in certain circumstances, a condemnee may pursue damages for a *de facto* taking alongside, or together with, the pursuit of damages for a *de jure* taking. *See, e.g.*, *Department of Transportation v. Greenfield Township-Property Owners*, 582 A.2d 41 (Pa. Cmwlth. 1990) (*Greenfield Township-Property Owners*). Condemnee argues that the circumstances here allow her to pursue damages for both types of condemnation.

PennDOT responds that in order for a *de facto* taking to occur, the condemnor must take action other than filing a declaration of taking. Even were Condemnee to establish that the taking of the porch constituted a taking of the house, then the remedy consists of just compensation for a partial *de jure* taking.

In *Szabo II*, 202 A.3d at 53, our Supreme Court held that where a condemnor's declaration of taking "did not establish the extent or effect of the taking[]" then it effects a *de facto* condemnation for the purposes of 26 Pa. C.S. §502(c)(1). In so holding, the Supreme Court affirmed this Court's decision in *Szabo v. Department of Transportation*, 159 A.3d 604 (Pa. Cmwlth. 2017) (*Szabo I*).

11

In *Szabo I*, PennDOT filed a declaration of a partial taking of a retail property owned by the Szabos. Plot plans were attached to the notice of condemnation showing the properties affected by PennDOT's planned expansion of State Route 19. In preparation for a hearing before a board of viewers, the Szabos engaged the services of a surveyor, who discovered that the plot plans filed by PennDOT misidentified and "understated the amount of property owned by the Szabos taken as part of the condemnation. Therefore, [PennDOT] condemned more of the Szabos' property than the Declaration indicated." *Szabo I*, 159 A.3d at 606. The Szabos requested an evidentiary hearing to identify the contours of property taken and the owner thereof, which was denied by the trial court. This Court reversed.

Because PennDOT's plot plans were inaccurate, they did not provide the Szabos adequate notice of the taking. When that occurs, the landowner may raise the issue of a *de facto* taking. *Szabo I*, 159 A.3d at 608. For the same reason, the condemnee was not bound by the 30-day statute of limitations in Section 306(a)(1) of the Eminent Domain Code for filing preliminary objections to the declaration of taking. *Id*. at 608-09.

PennDOT appealed, and the Supreme Court affirmed this Court. It agreed with the Szabos that PennDOT "perpetrated a *de facto* taking of Parcels 1 and 9 when it did not include them in the *de jure* declaration of taking for Parcel 5 and identified them as being owned by other parties." *Szabo II*, 202 A.3d at 61. It was PennDOT that "bore the burden of accurately notifying the owners of land subject to the taking so that they could protect their interests and secure just compensation." *Id*. at 64.

12

*Szabo I* and *II* established that an inaccurate declaration of taking is the functional equivalent of a condemnation done "without the filing of a declaration of taking" under 26 Pa. C.S. §502(c)(1).  The landowner's remedy is to file a petition for a board of viewers.  *Id*.  The question, then, is whether a board of viewers can award damages for both a *de jure* and a *de facto* condemnation in a single proceeding.

In *Greenfield Township-Property Owners*, 582 A.2d 41, PennDOT did a *de jure* taking of 15.08 acres of land for a highway, which left the remaining 68.77 acres landlocked.  We allowed the condemnee's petition for a board of viewers to seek damages for both a *de facto* and a *de jure* taking.  We explained as follows:

> Although PennDOT was not in possession of the 68.77 acres and did not have title to that property, we find that because they substantially deprived the DeMarcos of the use and enjoyment of their property, there was a *de facto* taking of the DeMarcos' southern 68.77 acres, and the DeMarcos were entitled to condemnation damages as a result of that taking.

*Id*. at 44-45.  The board of viewers was authorized to assess damages for the *de jure* taking of 15.08 acres and separate damages for the *de facto* taking of 68.77 acres.

In *In re: Commonwealth, Department of General Services*, 714 A.2d 1159 (Pa. Cmwlth. 1998) (*General Services*), the Department of General Services condemned several miles of an abandoned railroad bed, which severed a large tract of land from the remainder.  Five years after the declaration of taking was filed, the condemnees petitioned for an appointment of viewers, alleging, *inter alia*, that the *de jure* condemnation resulted in a *de facto* taking of other land.  Citing *Greenfield Township-Property Owners*, this Court held that the condemnees were allowed to pursue damages for both the *de jure* and *de facto* takings.[3]

---

[3] We also held that the issue of the *de facto* taking was not waived, stating:

13

In *York OPA, LLC v. Department of Transportation*, 181 A.3d 5 (Pa. Cmwlth. 2018), PennDOT did a partial taking of property owned by the condemnee. Two years later, the condemnee petitioned for a board of viewers, claiming that a 0.142-acre area shown on the declaration of taking as part of PennDOT's existing right-of-way was actually land that belonged to the condemnee, thus effecting a *de facto* taking of 0.142 acres of condemnee's land. PennDOT filed preliminary objections asserting, *inter alia*, that because the condemnee did not raise the issue in preliminary objections to PennDOT's declaration of taking, the issue was waived. When the trial court overruled PennDOT's preliminary objections, PennDOT appealed. In affirming the trial court, this Court stated as follows:

> In the course of its preparation for the first hearing before the board of viewers, OPA determined that the 0.142-acre area was not an existing right-of-way. The trial court agreed with that determination, finding that [Penn]DOT's Declaration failed to properly identify the 0.142-acre area. *The trial court concluded that the misidentification resulted in* [*Penn*]DOT's *taking of more property than what was condemned in the Declaration*. As we explained in *Szabo* [*I*], a landowner's failure to file preliminary objections to a declaration of taking does not preclude the landowner from subsequently alleging a *de facto* taking of a portion of property that was not condemned through a declaration. *Szabo* [*I*], 159 A. 3d at 608. . . .
>
> Therefore, based upon our holding in *Szabo* [*I*], we find that OPA did not waive its right to raise the issue of a *de facto*

---

In [*Greenfield Township-Property Owners*], the court held that landowners, who were *unaware at the time a declaration of taking was filed that a portion of their property would be landlocked as a result of the condemnation, did not waive the issue of a de facto taking by failing to raise the issue in preliminary objections* to the declaration of taking. The record here supports the conclusion that the Declaration of Taking did not adequately establish the extent or effect of the taking. Therefore, this issue is not waived.

*General Services*, 714 A.2d at 1161-62 (emphasis added).

14

taking, despite its failure to file preliminary objections to the Declaration.

*York OPA*, 181 A.3d at 11-12 (emphasis added; citations omitted).

PennDOT responds that the above-reviewed cases are distinguishable. *Greenfield Township-Property Owners* and *General Services* involved takings that left the remainder of the condemnees' land inaccessible. PennDOT argues that, in contrast, Condemnee has been able to enjoy the use of her house, even after PennDOT's taking of part of the porch.[4] In *York OPA*, PennDOT mistakenly treated land owned by the condemnee as land already owned by PennDOT. Here, the Plot Plan correctly described the partial taking. It simply failed to depict the porch in the drawing of the "masonry dwelling." We reject PennDOT's argument.

The Plot Plan showed that the expanded right-of-way would steer clear of Condemnee's house. By taking part of the house, *i.e.*, the porch, PennDOT condemned property other than what was described in its Declaration of Taking, *i.e.*, land that did not touch the "masonry dwelling."

PennDOT argues that under the holding in *2800 N. Broad Street*,[5] Condemnee cannot seek damages for a *de facto* taking in a *de jure* proceeding.

---

[4] This is a factual question to be decided by the trial court on remand.

[5] In *2800 N. Broad Street*, 259 A.3d 1022, PennDOT filed a declaration of a partial taking of the condemnee's property for a road improvement project. The condemnee sought damages (i) under Section 502(a) of the Eminent Domain Code for the *de jure* partial taking and (ii) under Section 502(c) of the Eminent Domain Code for the *de facto* taking of the condemnee's remaining property, which was alleged to have lost all economic value as a result of the partial condemnation. In its preliminary objections, PennDOT argued that the "filing of a declaration of taking, whether considered a partial or total taking, 'encompasses' the entire parcel for purposes of determining just compensation." *2800 N. Broad Street*, 259 A.3d at 1024 (quotation omitted). PennDOT argued, further, that "only a *de jure* taking occurred and that any damages were part of and the result of the declaration of taking." *Id*. This Court agreed with PennDOT.

In so holding, we relied upon Section 702(a) of the Eminent Domain Code, which states that "[j]ust compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation . . . and the fair market

However, that case did not concern whether the declaration of taking accurately identified the property being taken. There, the condemnee asserted that PennDOT's partial taking caused the remaining property to lose all economic value. The condemnee termed its claim for its damages as "*de facto*," but this was error because the claim of economic loss related entirely to the *de jure* taking. In short, *2800 N. Broad Street* is distinguishable and did not overrule *York OPA* or *Greenfield Township-Property Owners*. We reject PennDOT's argument that *2800 N. Broad Street* is dispositive.

Here, the taking of part of Condemnee's "masonry dwelling" constituted a *de facto* condemnation that was separate and apart from the *de jure* condemnation of Condemnee's land that borders County Line Road. Accordingly, Condemnee is entitled to seek relief under Section 502(c) of the Eminent Domain Code. As in *Greenfield Township-Property Owners*, the board of viewers can assess damages for both a *de facto* and a *de jure* taking of Condemnee's property, once the trial court has determined the extent and duration of PennDOT's fee simple taking of part of Condemnee's house.

### IV. Hearing on PennDOT's Preliminary Objections

In her final issue, Condemnee argues that because she was denied the opportunity to submit a written brief and present oral argument in opposition to PennDOT's preliminary objections, she was denied due process. PennDOT responds that, under the Eminent Domain Code, a hearing is only required where

---

value of the property interest remaining immediately after the condemnation[.]" 26 Pa. C.S. §702(a).

     In short, we held that a *de jure* condemnation is not converted to a *de facto* condemnation "by an averment in a preliminary objection to a declaration of taking that the effect of the *de jure* condemnation was to render the property valueless." *2800 N. Broad Street*, 259 A.3d at 1027 (quotation omitted).

16

"an issue of fact is raised[.]" 26 Pa. C.S. §504(d)(5).[6] Here, the only question was a legal one, whether Counts II through IV were valid as a matter of law.

In support of her contention that the trial court was required to allow briefs and oral argument on PennDOT's preliminary objections, Condemnee directs this Court to three cases: *Appeal of Conway*, 432 A.2d 276 (Pa. Cmwlth. 1981); *Condemnation Proceeding In Rem by the Redevelopment Authority of the City of Philadelphia*, 686 A.2d 453 (Pa. Cmwlth. 1996); and *In re Condemnation No. 2 by Commonwealth ex rel. Department of General Services*, 943 A.2d 997 (Pa. Cmwlth. 2007). Each case stands for the principle that where preliminary objections raise factual issues, the court must conduct an evidentiary hearing before deciding the preliminary objections. Here, by contrast, in her answer to PennDOT's preliminary objections, Condemnee stated that the "essential facts needed" to determine whether the Petition presented a valid *de facto* taking were the Plot Plan and Condemnee's Survey, both of which were "already part of the record[.]" S.R.R. 100b. In short, she conceded there was no need for an evidentiary hearing on the legal merits of Count III of her Petition.

Briefs and oral argument may have been helpful to the trial court, but they were not required by the Eminent Domain Code or by due process. Where issues are purely legal, the court is not required to hold a hearing on preliminary objections. *Miller v. Department of Transportation*, 498 A.2d 1370, 1373 (Pa. Cmwlth. 1985). As in every case where the statute and rules are silent on a

---

[6] It states:

> If an issue of fact is raised, the court shall conduct an evidentiary hearing or order that evidence be taken by deposition or otherwise, but in no event shall evidence be taken by the viewers on this issue.

26 Pa. C.S. §504(d)(5).

procedural issue, the trial court determines the appropriate procedure for the disposition of a case. *Appeal of Borough of Churchill*, 575 A.2d 550, 554 (Pa. 1990).

We reject Condemnee's argument that the trial court erred and abused its discretion in not directing briefs and oral argument on PennDOT's preliminary objections to Count III, which raised only legal issues.

**Conclusion**

PennDOT argues that because Count III does not specifically allege that Condemnee could not use and enjoy her house, it does not sufficiently plead a *de facto* taking. This is not strictly accurate because the Petition alleged that PennDOT's fee simple ownership of part of the porch impeded her ability to make needed repairs to the porch. In any case, the loss of use and enjoyment of property is not the only way to plead a *de facto* taking of property.

PennDOT's Declaration of Taking excluded from its taking a rectangle shown on the Plot Plan, and that rectangle can only be reasonably understood to depict Condemnee's entire dwelling, including the porch. A condemnee should not be required to hire a surveyor in order to understand the precise bounds of a condemnor's taking, and it would be impossible to have a survey completed in time to meet the 30-day deadline for filing preliminary objections. As explained in *Szabo II*, 202 A.3d at 64, the burden is on the condemnor to be clear on the contours of its taking.[7] Because PennDOT did not satisfy this burden, its Declaration of Taking did not foreclose Count III of Condemnee's Petition.

---

[7] In *Szabo II*, the condemnee requested an evidentiary hearing on the extent of the taking. Procedurally, it was considered an amendment to the pending and already scheduled hearing on the *de jure* taking. Here, Condemnee seeks a hearing by including the *de facto* taking as a separate count in her Petition for appointment of a board of viewers. It is a distinction without a difference.

18

For these reasons, we reverse the trial court's order striking that part of Count III from the Petition and remand the matter to the trial court for a factual and legal determination on the discrete *de facto* taking of part of Condemnee's house, *i.e.*, the porch and steps.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret L. Burns,                        :
                Appellant    :
                                    :
              v.               :       No. 685 C.D. 2025
                                    :
Commonwealth of Pennsylvania,    :
Department of Transportation      :

**O R D E R**

AND NOW, this 7th day of July, 2026, the order of the Court of Common Pleas of Montgomery County, dated April 24, 2024, striking Count III from the Petition for Appointment of a Board of Viewers filed by Margaret L. Burns is REVERSED, and the matter is REMANDED for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita